UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
YAVETTEE LYNCH,

                              Plaintiff,

      – against –

MEGAN J. BRENNAN, Postmaster General;
U.S. POSTAL SERVICE,

                             Defendants.

-------------------------------------------------------------------------x

No. 15-CV-2479 (CS)

**OPINION & ORDER**

Appearances:

YaVettee Lynch
*Plaintiff Pro Se*

Anthony J. Sun
Assistant United States Attorney
New York, New York
*Counsel for Defendant*

Seibel, J.

       Plaintiff YaVettee Lynch asserts claims for retaliation at her workplace. Before the Court is the Motion for Summary Judgment of Defendant Megan J. Brennan.[1] (Doc. 54.) For the reasons stated below, Defendant's motion is GRANTED.

---

[1] Defendant notes that Megan J. Brennan replaced Patrick Donohoe as Postmaster General on February 1, 2015. (Doc. 56 ("Sun Decl.") at 1 n.1.) She is thus automatically substituted as a defendant in his place pursuant to Federal Rule of Civil Procedure 25(d). As the Postmaster General is the only proper defendant in a case such as this, where a postal employee sues under Title VII, *see, e.g.*, *Mathirampuzha v. Potter*, 371 F. Supp. 2d 159, 163 (D. Conn. 2005), I refer to "Defendant" rather than "Defendants."

## I. BACKGROUND

### A. Facts[2]

1. Background

Plaintiff is a tools and parts clerk for the United States Postal Service ("USPS") at a vehicle maintenance facility in White Plains, New York. (56.1 Stmt. ¶ 26; Doc. 7 ("Answer") ¶ 18.) Plaintiff was the only female who worked her shift, which was called "Tour Three" and lasted from 2:00 pm to 10:30 pm. (Doc. 67 Ex. 6 ("P's Dep.") at 38, 40.) At all relevant times Plaintiff's supervisor was David Cox and her manager was Ismael Velez. (Compl. ¶ 5; P's Dep. at 42.)

As a tools and parts clerk, Plaintiff's job responsibilities included procuring parts requested by mechanics, supervisors, and other post office employees. (P's Dep. at 103-04.) She ordered the parts using two different USPS credit cards. (*Id.* at 104.) As part of using USPS credit cards, she was required to reconcile her bank statements by a certain deadline each month, (*see id.* at 107-08), and her purchases were subject to various supervisors' approval, (*see id.* at 111).

---

[2] Despite receiving the Notice to *Pro Se* Litigant Who Opposes a Motion for Summary Judgment, (Doc. 58), Plaintiff did not submit a response to Defendant's Local Rule 56.1 Statement of Material Facts ("56.1 Stmt."), (Doc. 57). I could deem the properly supported facts in Defendant's 56.1 Statement undisputed because "even a *pro se* litigant . . . is bound by an unrefuted Local Rule 56.1 statement." *Brown v. City of N.Y.*, No. 15-CV-6217, 2016 WL 7410661, at *1 (E.D.N.Y. Dec. 22, 2016); *see* Fed. R. Civ. P. 56(e). (The Court will send Plaintiff copies of all unreported decisions in this Opinion & Order.) Because of Plaintiff's *pro se* status, however, I will "overlook [her] failure to comply with local court rules," *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001), and "review [her] opposition, deposition and supporting papers for factual disagreements with Defendant[s'] 56.1 Statement . . . and will only deem admitted those facts in Defendant[s'] 56.1 Statement that are supported by admissible evidence in the record," *John v. Kingsbrook Jewish Med. Ctr. / Rutland Nursing Home*, No. 11-CV-3624, 2014 WL 1236804, at *1 n.1 (E.D.N.Y. Mar. 25, 2014), *aff'd*, 598 F. App'x 798 (2d Cir. 2015) (summary order). I will also consider Plaintiff's version of the facts as alleged in the Complaint, (Doc. 1 ("Compl.")), because that document was sworn under penalty of perjury. *See Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (considering plaintiff's version of facts as alleged in sworn verified complaint on defendant's motion for summary judgment).

2. Plaintiff's Initial EEO Activity

On March 21, 2014, Plaintiff made a request for pre-complaint counseling with USPS's Equal Employment Opportunity ("EEO") office, which case was designated 4B-105-0011-14 ("Case 11"). (Sun Decl. Ex. B.) In Case 11, Plaintiff alleged that: (1) Cox told her he "was sending another employee to sign off on [her] credit card" usage; (2) he did not pay Plaintiff correctly off and on for over six months; (3) on March 12, 2014, he threatened to stop Plaintiff from achieving a "higher level;" and (4) Cox failed to teach Plaintiff how to use the "system." (*Id.* Ex. B at 1-2.)[3] Following mediation, Plaintiff, Cox, and Velez entered into an agreement on June 11, 2014 settling "all issues arising out of the subject matter" of Case 11. (*Id.* Ex. C at 1.)

3. Alleged Retaliation & Subsequent EEO Activity

Plaintiff testified that in May 2014, Arlene McDuffie, the shop steward at the vehicle maintenance facility where Plaintiff worked, (*see* P's Dep. at 45; Compl. ¶¶ 14, 17), filed a report that Plaintiff had tried to run McDuffie over with a car, (P's Dep. at 64; Compl. ¶ 18). McDuffie's claim was investigated, and Plaintiff was interviewed by inspectors for "a few minutes or half an hour," (P's Dep. at 66), after which the inspectors concluded that Plaintiff had been driving "the correct way," (*id.* at 65), and Velez told the inspectors that Plaintiff was "all right," (*id.* at 66). Plaintiff was not disciplined, terminated, or arrested as a result of this incident. (*See id.* at 138, 144-45.)

Plaintiff claims that in July 2014, Cox interfered with her work by refusing to preapprove certain of her credit card purchases, (*see* Compl. ¶ 10; P's Dep. at 119-21), and assigning

---

[3] Plaintiff did not specify the basis on which she believed she was being discriminated (race, religion, sex, etc.). (*Id.* Ex. B.)

Plaintiff certain tasks, then assigning them to a coworker of Plaintiff's, and complaining to Velez that Plaintiff was derelict in her duties, (*see* Compl. ¶ 10; P's Dep. at 121-23).[4]

According to Plaintiff, on August 19, 2014, Cox cornered Plaintiff and complained about her failure to properly reconcile her USPS credit card statements. (*See* Compl. ¶ 11; Sun Decl. Ex. F at 1-2.) At some point during this encounter, Cox shook his finger in Plaintiff's face, (Compl. ¶ 11), which Plaintiff contends was somehow connected to Cox's direction that she not participate in unspecified activities because Plaintiff was being investigated for McDuffie's May 2014 complaint, (P's Dep. at 129).

On August 20, 2014, Plaintiff made another request for pre-complaint counseling with the EEO office, which case was designated 4B-105-0023-14 ("Case 23"). (Sun Decl. Ex. F.) In Case 23, Plaintiff alleged harassment and retaliation for her previous EEO complaint, including: (1) Cox waited until Plaintiff was alone in the stockroom to discuss her invoices and credit card statements; (2) Cox asked her why she thought she could "make up [her] own hours to work;" (3) Plaintiff worked fifty minutes past the end of her shift but received "no overtime;" (4) Cox shook his finger in Plaintiff's face; (5) Cox was working with McDuffie "again;" (6) Cox kept copies of invoices Plaintiff signed when parts came in; (7) a male coworker was leaving the facility in his personal car while on the clock, which is prohibited; and (8) McDuffie copies Plaintiff's work and gives it to Plaintiff's supervisor. (*Id.* Ex. F at 1-2, 4.)[5]

---

[4] Plaintiff testified that Cox would also "hold up the mail," although she was unclear how this affected her. (*See* P's Dep. at 117-18.)

[5] In her August 20, 2014 request Plaintiff also alleged that Cox breached the Case 11 settlement agreement. (*Id.* Ex. F at 2.) The USPS EEO office performed an inquiry into this allegation and determined on December 3, 2014 that USPS "substantially complied with terms of the settlement agreement." (*Id.* Ex. D at 2.) Plaintiff appealed this decision to the U.S. Equal Employment Opportunity Commission ("EEOC"), which affirmed the USPS EEO's decision on January 5, 2016. (*Id.* Ex. E.)

On October 3, 2014, Cox called Plaintiff into his office in an attempt to administer a pre-disciplinary interview ("PDI"). (Compl. ¶ 14.) Cox directed that McDuffie, in her capacity as shop steward, (*see* P's Dep. at 136-37), represent Plaintiff during the PDI, (Compl. ¶ 14). Plaintiff refused to be represented by McDuffie given their past interactions, of which Plaintiff contends Cox was aware. (*See id.* ¶¶ 14, 19.) Plaintiff was not disciplined as a result of her refusal, but considered the interaction itself to be punishment. (P's Dep. at 140-41.)

On October 20, 2014, Velez emailed Plaintiff instructing her not to make any further purchases. (Sun Decl. Ex. L.) Velez noted a pending charge for which Plaintiff had not submitted an invoice, and explained that "[e]very [m]onth" Plaintiff failed to "complete [her] responsibility with US Bank Approval Process," which "is a direct violation of [Sarbanes-Oxley] Compliance." (*Id.* Ex. L.) Plaintiff responded on October 22, 2014 indicating that she would "send it back tomorrow," (*id.* Ex. L), presumably referring to the missing invoice.

On November 12, 2014, Plaintiff submitted an additional request for pre-complaint counseling with respect to Case 23, alleging additional incidents of harassment and retaliation: (9) Cox threatened to conduct a PDI with Plaintiff after Plaintiff refused to participate in a meeting with Cox and McDuffie because McDuffie had allegedly harassed Plaintiff for years, including lying to inspectors about Plaintiff; (10) Plaintiff received a "letter of warning" that was later expunged; (11) McDuffie sent emails to the supervisor and manager "against" Plaintiff; and (12) Cox told Plaintiff not to come in early, despite all other employees on her shift being able to do so. (*Id.* Ex. G at 1-3.)

On November 6, 2014, Plaintiff participated in mediation with an EEO dispute resolution specialist with respect to the allegations in Case 23. (*See id.* Ex. J at 3.) The dispute resolution specialist's inquiry report, which was filed on December 29, 2014, summarized Plaintiff's claims

5

in Case 23 of harassment and retaliation for filing Case 11 as: (1) Cox harassed Plaintiff on August 19, 2014 about her credit card statement and invoices; (2) also on August 19, 2014, Cox accused Plaintiff of not adhering to her schedule; (3) on an unspecified date Cox shook his finger in Plaintiff's face; (4) on October 3, 2014, Cox attempted to have a PDI with Plaintiff; (5) on unspecified dates, Cox had been working with the union against Plaintiff; and (6) on October 20, 2014, Velez sent Plaintiff an email saying she should not make further purchases. (*See id.* Ex. J at 1.) On November 18, 2014, an EEO specialist sent Plaintiff a letter summarizing the EEO's inquiry into Plaintiff's claims in Case 23 (the "Final Interview"). (*Id.* Ex. H.) The Final Interview listed the same six allegations as in the dispute resolution's inquiry report. (*Id.* Ex. H at 1-2.)

The EEO received Plaintiff's formal complaint ("EEO Complaint") on December 18, 2014, which, although far from clear, appears to have alleged: (1) on March 12, 2014, Cox was working with McDuffie to give Plaintiff a letter of warning, Plaintiff's union representative gave Cox a list of documents she needed, and Cox slipped that list under McDuffie's door; (2) on August 19, 2014, Plaintiff asked Cox to explain a "detail form" that had expired, and Cox responded that "a level 8 should know," which Plaintiff alleged was in breach of the Case 11 settlement agreement; (3) on August 19, 2014, Plaintiff asked Cox for "clock rings" but Cox would not give them to her; (4) on August 19, 2014 there was a scheduling issue regarding Plaintiff's attendance at a funeral; (5) also on August 19, 2014, Cox approached Plaintiff while she was alone to address a bank statement, and shook his finger at her; (6) on October 3, 2014, Cox and Velez conducted a PDI of Plaintiff with McDuffie present, which Plaintiff alleges was a violation of the Case 11 settlement agreement; (7) on October 22, 2014 Velez emailed Plaintiff

and directed her not to use her USPS credit card, after which Plaintiff stopped using the credit card; and (8) a reference to a stolen USPS credit card. (*Id.* Ex. I at 1; *see id.* Ex. C; *id.* Ex. L.)

On January 9, 2015, the USPS EEO issued its final decision ("Agency Decision") dismissing Plaintiff's EEO Complaint in its entirety. (*Id.* Ex. K.)[6] The Agency did not consider: Plaintiff's allegation that she received a letter of warning on March 12, 2014, because it was included in EEO Case 4B-105-0024-12; and Plaintiff's allegations that the Case 11 settlement agreement was breached when Cox failed to give her clock rings and Cox conducted a PDI of Plaintiff with McDuffie present because they would be addressed separately. (*Id.* Ex. K at 1 n.1.) The Agency Decision addressed six alleged instances of discrimination based on retaliation: (1) on August 19, 2014, Plaintiff was accused of not adhering to her schedule; (2) on August 19, 2014, Cox asked Plaintiff about her USPS credit card and "shook his fist;" (3) on October 3, 2014, Plaintiff was given a PDI; (4) on October 22, 2014, Plaintiff was instructed via email not to use her USPS credit card; (5) on an unspecified date, Cox shook his finger in Plaintiff's face; and (6) on unspecified dates, Plaintiff was harassed by her union representative. (*Id.* Ex. K at 1-2.)

**B. Procedural History**

Plaintiff commenced the instant action by filing a *pro se* complaint on April 1, 2015. (Doc. 1 ("Compl.").) The complaint alleged harassment as retaliation for filing EEO complaints, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, ("Title

---

[6] The Agency Decision states that it was signed on December 9, 2014 and filed on December 15, 2014. (*Id.* Ex. K at 1, 7.) Defendant contends that, based on internal records, the Agency Decision was not issued until January 9, 2015, (Doc. 55 ¶ 6), which makes sense given that EEO had not received Plaintiff's EEO Complaint until December 18, 2014, (Sun Decl. Ex. I at 1). In any event, the inconsistency is not material to my decision, and Defendant concedes that Plaintiff's complaint in this Court was timely. (Doc. 59 ("D's Mem.") at 6 n.5.)

VII"). (*Id.*)[7] Defendant answered on August 24, 2015. (Doc. 7.) On September 16, 2015, I entered a Scheduling Order, which required that all fact discovery be completed by March 15, 2016. (Doc. 12.) On January 26, 2016, I extended the fact discovery deadline to June 14, 2016, (Doc. 23), at Defendant's request, (Doc. 21). On June 7, 2016, I further extended the fact discovery deadline to July 14, 2016, (Doc. 34), this time at Plaintiff's request, (Doc. 33). On June 14, 2016, at the parties' request, I referred the case to court-annexed mediation, (Doc. 38), for the limited purpose of which *pro bono* counsel was appointed for Plaintiff, (Doc. 42). Mediation was held on October 24, 2016, and the parties engaged in further discussions through December 2016, none of which resulted in resolution of the case. (*See* Docs. 46, 52.)

At a January 3, 2017 status conference, I set a briefing schedule for Defendant's proposed motion for summary judgment, (Minute Entry dated January 3, 2017), and Defendant filed the instant motion on February 13, 2017, (Doc. 54). On March 7, 2017, I granted Plaintiff's request to extend the deadline for her opposition from March 13, 2017 to March 28, 2017. (Doc. 64.) On March, 28, 2017, I granted Plaintiff's second request to extend the deadline for her opposition from March 28, 2017 to April 24, 2017, and ordered that there would be no further extensions. (Doc. 66.) Plaintiff filed her opposition papers on April 24, 2017, (Doc. 67 ("P's Opp.")), and Defendant filed her reply on May 8, 2017, (Doc. 68 ("D's Reply")).

## II. <u>DISCUSSION</u>

### A. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

---

[7] The Complaint identified the alleged illegal discrimination as "unequal terms and conditions of employment," "retaliation," and "harassment," but it did not specify a basis (race, religion, sex, etc.), and it is clear from the narrative that Plaintiff claimed only retaliation. (Compl. at 2-3, ¶¶ 1-24.)

8

R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to "present evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). Where an affidavit is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in

9

evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

In addition, *pro se* litigants must be afforded "special solicitude," *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010), "particularly where motions for summary judgment are concerned," *Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014).

**B. Plaintiff's Request for Additional Time**

As discussed above, Plaintiff failed to file a response to Defendant's 56.1 Statement, and in her opposition acknowledges that she was "unable to properly address some assertions of fact." (P's Opp. ¶ 10.) In responding to Defendant's motion, Plaintiff takes issue with several assertions made in Defendant's brief and states that either she or her coworker Mark Fitzpatrick can provide testimony refuting Defendant's version of the events. (*See id.* ¶¶ 2, 4, 6, 9.) Because of this, she requests that I "allow additional time for [her] to present facts essential to justify her opposition to [D]efendant's motion." (*Id.* ¶ 10.)

I construe this as a request under Federal Rule of Civil Procedure 56(d), which provides: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." "Any such affidavit or declaration must describe: (1) what facts are sought

and how they are to be obtained, (2) how such facts are reasonably expected to raise a genuine issue of material fact, (3) what efforts the affiant has made to obtain them, and (4) why the affiant's efforts were unsuccessful." *Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 522 (S.D.N.Y. 2015) (internal quotation marks omitted). "The failure to file a Rule 56(d) affidavit sufficiently explaining the need for additional discovery 'is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Lunts v. Rochester City Sch. Dist.*, 515 F. App'x 11, 13-14 (2d Cir. 2013) (summary order) (quoting *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994)). This rule applies to *pro se* litigants. *Quince v. Anoplate Corp.*, No. 14-CV-140, 2015 WL 3902219, at *15 (N.D.N.Y. June 25, 2015).

First, Plaintiff offers no reason why she, despite apparently being able to refute some of Defendant's factual assertions with her own testimony, did not do so. I granted two extensions for her opposition deadline, and she has not explained why she could not have prepared an affidavit of her own during that time. Second, where she asserts that Fitzpatrick has testimony, she provides only "conclusory allegations of incomplete discovery," *Lunts*, 515 F. App'x at 14 (affirming denial of *pro se* plaintiffs' 56(d) request), does not explain why she was not able to obtain an affidavit from Fitzpatrick or ask her own questions of him when Defendant took his deposition, and does not explain what Fitzpatrick would say that would refute Defendant's version of the facts. Finally, "'[a] party who both fails to use the time available and takes no steps to seek more time until after a summary judgment motion has been filed need not be allowed more time for discovery absent a strong showing of need.'" *Scott v. Koenigsmann*, No. 12-CV-1551, 2016 WL 1057051, at *9 (N.D.N.Y. Mar. 14, 2016) (quoting *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 928 (2d Cir. 1985)). Plaintiff has not made such a showing here, and her request for additional time to complete discovery is thus

denied. *See Lunts*, 515 F. App'x at 14; *see also Falso v. Rochester City Sch. Dist.*, 460 F. App'x 60, 61-62 (2d Cir. 2012) (summary order) (affirming denial of Rule 56(d) relief for *pro se* plaintiff because he did not submit affidavit sufficiently describing facts he sought to discover); *Rector v. U.S. Dep't of Justice*, No. 14-CV-1883, 2016 WL 7188135, at *4 (S.D.N.Y. Nov. 22, 2016) (rejecting *pro se* plaintiff's request for Rule 56(d) relief because she did not identify "any potentially discoverable evidence that would have raised a genuine issue of material fact as to any of her claims") (alteration and internal quotation marks omitted); *Quince*, 2015 WL 3902219, at *16 (denying *pro se* plaintiff's request for Rule 56(d) relief because, among other things, he did not show "what effort he has made to obtain the discovery in question, and why he was unsuccessful in those efforts").

**C. Retaliation**

Defendant first argues that three of Plaintiff's alleged instances of retaliation are not properly before this Court because she did not exhaust her administrative remedies with respect to those events. Plaintiff does not address this argument in her opposition. But I need not reach it because even assuming that all the conduct of which Plaintiff complains was properly exhausted, Plaintiff's retaliation claim fails.

Title VII retaliation claims are analyzed using the *McDonnell Douglas* burden-shifting framework. *See Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005); *Ghaly v. USDA*, 739 F. Supp. 2d 185, 198 (E.D.N.Y. 2010). First, Plaintiff bears the burden of establishing a *prima facie* case of discrimination, which requires her to show that: (1) she was engaged in activity protected under anti-discrimination statutes; (2) Defendant was aware of her participation in the protected activity; (3) Defendant took adverse action against her; and (4) there is a causal connection between her protected activity and the adverse action taken by

Defendant. *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010). The burden of proof at this stage is "de minimis," *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010), "but it is not non-existent," *Pleener v. N.Y.C. Bd. of Educ.*, No. 05-CV-973, 2007 WL 2907343, at *11 (E.D.N.Y. Oct. 4, 2007) (internal quotation marks omitted), *aff'd*, 311 F. App'x 479 (2d Cir. 2009) (summary order). If the plaintiff meets this burden, "a presumption of retaliation arises," and to succeed the defendant must offer a legitimate, non-retaliatory reason for its actions. *See Jute*, 420 F.3d at 173. If the employer produces evidence of a non-retaliatory justification for the adverse employment action, the plaintiff must demonstrate that there is sufficient evidence for a reasonable juror to find that the reason offered by the defendant is pretext for retaliation. *See id.*

Plaintiff raises a number of allegations of harassment in retaliation for her previous EEO activity: (1) in May 2014, Cox and McDuffie conspired to have Plaintiff terminated from USPS and arrested based on McDuffie's allegation that Plaintiff tried to hit McDuffie with Plaintiff's car, (Compl. ¶¶ 16-18); (2) in July 2014, Cox interfered with Plaintiff's work by refusing to preapprove certain purchases, (*id.* ¶ 10); (3) Cox assigned tasks to both Plaintiff and another employee and complained to Velez that Plaintiff was incompetent, and threatened to discipline Plaintiff, (*id.*); (4) on August 19, 2014, Cox cornered Plaintiff and shook his finger at her, (*id.* ¶ 11); (5) on October 3, 2014, Cox attempted to conduct a PDI with Plaintiff with McDuffie acting as Plaintiff's union representative, (*id.* ¶¶ 14, 19); and (6) on October 22, 2014, Velez instructed Plaintiff not to use USPS credit cards, (*id.* ¶¶ 20-21).

Defendant argues that Plaintiff fails to establish a *prima facie* case because she cannot show that she suffered an adverse employment action. To establish an adverse employment action in the context of a retaliation claim, "a plaintiff must show that a reasonable employee

13

would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted).[8] "Title VII is not a general 'bad acts' statute," *Wimmer v. Suffolk Cty. Police Dep't*, 176 F.3d 125, 135 (2d Cir. 1999) (internal quotation marks omitted), and "'[p]etty slights or minor annoyances that often take place at work and that all employees experience' do not constitute actionable retaliation," *Hicks*, 593 F.3d at 165 (quoting *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68).

I agree that Plaintiff has failed to establish that she was subjected to any adverse employment action. First, three of Plaintiff's claims – that Cox refused to preapprove certain credit card purchases by Plaintiff, that Cox assigned Plaintiff's work to another coworker, and that Velez instructed her not to use USPS credit cards – only reflect that Plaintiff was subjected to "legitimate supervision" by her supervisor. *Mugavero v. Arms Acres, Inc.*, No. 03-CV-5724, 2009 WL 890063, at *9 (S.D.N.Y. Mar. 31, 2009) (closer scrutiny of plaintiff's medical charts, criticism and hostility toward plaintiff, and change in plaintiff's day off did not establish adverse employment action); *see Deshpande v. Medisys Health Network, Inc.*, No. 07-CV-375, 2010 WL 1539745, at *14 (E.D.N.Y. Apr. 16, 2010) ("[C]lose monitoring, without more, is insufficient to constitute a materially adverse action under Title VII.") (collecting cases). There is simply no evidence in the record from which a reasonable jury could conclude that these actions were anything but efforts by Cox and Velez to attempt to have Plaintiff perform her job duties and to reprimand her where warranted. Plaintiff testified that purchases on her two USPS credit cards

---

[8] Because adverse action for purposes of a discrimination claim is different from, and a higher standard for a plaintiff to meet than, adverse action for purposes of a retaliation claim, *see, e.g.*, *Quadir v. N.Y. State Dep't of Labor*, 39 F. Supp. 3d 528, 542 (S.D.N.Y. 2014), Defendant's citation to discrimination cases, (D's Mem. at 15-16; D's Reply at 10), is not helpful.

14

are subject to approval by her supervisors, (P's Dep. at 111), that reconciling the credit card statements and corresponding bank accounts was part of her job responsibilities, (*id.* at 104, 106-07), and that she sometimes failed to "keep up" with the monthly deadlines for doing so, (*id.* at 107-08). Plaintiff does not dispute that she did not perform these job duties as directed, arguing only that she should be excused from doing so because she "can't do anything in a timely manner, because [she is] human." (*Id.* at 108.) At bottom, requiring Plaintiff to perform her job duties, and taking steps when she failed to do so, did not amount to an adverse employment action. *See Szwalla v. Time Warner Cable, LLC*, 135 F. Supp. 3d 34, 51 (N.D.N.Y. 2015) ("Requiring Plaintiff to continue to perform the same job duties that she was required to perform prior to filing a complaint against [her supervisor] cannot be construed as a materially adverse employment action."), *aff'd*, 670 F. App'x 738 (2d Cir. 2016) (summary order); *Scott v. Donahoe*, 913 F. Supp. 2d 355, 367-68 (W.D. Ky. 2012) (showing plaintiff proper procedure for making clock rings, reprimanding plaintiff for not filling out grievances correctly, and instructing plaintiff not to use certain vehicle or cart did not amount to adverse employment action).

Next, that Cox attempted to conduct a PDI does not amount to an adverse employment action. It is undisputed that the attempted PDI did not result in any discipline for Plaintiff. (*See* P's Dep. at 140-41.) Even where a Title VII defendant is successful in administering a PDI, courts have found it insufficient to establish an adverse employment action. *See, e.g.*, *Scott*, 913 F. Supp. 2d at 368 (PDI "for allegedly failing to scan nineteen Express Mail pieces" along with "Official Job Discussion," with no discipline resulting therefrom, did not amount to adverse employment action); *McDaniel v. Potter*, No. 06-CV-803, 2007 WL 3165807, at *9 (N.D. Ohio Oct. 26, 2007) (PDI resulting from USPS coworker complaints about plaintiff's behavior did not amount to adverse employment action). It follows that Cox's threat to conduct a PDI cannot

15

amount to an adverse employment action. Similarly, Cox's threats in July 2014 to discipline Plaintiff and his complaints to Velez about Plaintiff are insufficient to establish an adverse employment action. *See Magnusson v. Cty. of Suffolk*, No. 14-CV-3449, 2016 WL 2889002, at *11 (E.D.N.Y. May 17, 2016) (reprimand is not adverse employment action where it neither carries or threatens "negative real-world consequences"), *aff'd*, No. 16-1876-CV, 2017 WL 1958699 (2d Cir. May 11, 2017) (summary order); *Alexander v. City of N.Y.*, 957 F. Supp. 2d 239, 249 (E.D.N.Y. 2013) (threat of discipline does not amount to adverse employment action); *Oliphant v. Conn. Dep't of Transp.*, No. 02-CV-700, 2006 WL 3020890, at *7 (D. Conn. Oct. 23, 2006) ("Counseling letters, like negative evaluations or other forms of workplace reprimands, are not disruptive enough to rise to the level of 'adverse employment actions.'").

While unpleasant, Cox shaking his finger in Plaintiff's face also does not amount to an adverse employment action where, as here, it was not accompanied by any punishment or additional conduct. *See Blake v. Potter*, No. 03-CV-7733, 2007 WL 2815637, at *2, 8 (S.D.N.Y. Sept. 25, 2007) (no reasonable jury could conclude that coworker yelling and pointing finger in plaintiff's face amounted to adverse employment action), *aff'd*, 330 F. App'x 232 (2d Cir. 2009) (summary order). Likewise, nothing came of Cox and McDuffie's alleged conspiracy to have Plaintiff arrested or terminated; by Plaintiff's own account, after McDuffie's complaint, Plaintiff was interviewed by inspectors for "a few minutes or half an hour," (P's Dep. at 66); the inspectors discovered that Plaintiff had been driving "the correct way," (*id.* at 65); and Velez told the inspectors that Plaintiff was "all right," (*id.* at 66). She never suffered any discipline as a result of McDuffie's accusation, (*id.* at 138), and an investigation into an accusation of wrongdoing is alone insufficient to amount to an adverse employment action. *See Scott*, 913 F. Supp. 2d at 368 (no adverse employment action where plaintiff was subjected to PDI regarding

unscanned pieces of mail, although investigation ultimately found that plaintiff made no error); *Radolf v. Univ. of Conn.*, 364 F. Supp. 2d 204, 224-25 (D. Conn. 2005) (investigation that does not result in material disadvantage in employment terms is not adverse employment action) (collecting cases).

"An employee's decision to report discriminatory behavior cannot immunize that employee from the petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68. The events to which Plaintiff points do not individually or collectively rise to the level of materially adverse actions that would chill a reasonable worker from speaking out. Because Plaintiff has not shown that she suffered an adverse employment action sufficient to establish a *prima facie* case of Title VII retaliation, her claim fails.

### III. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is GRANTED.[9] The Clerk of Court is directed to terminate the pending motion, (Doc. 54), and close the case.

**SO ORDERED**.

Dated: August 2, 2017
      White Plains, New York

*Cathy Seibel*
CATHY SEIBEL, U.S.D.J.

---

[9] At her deposition, Plaintiff indicated that she wished to amend the Complaint to add an allegation that Velez stole her USPS credit cards. (*See* P's Dep. at 83-84, 88-89.) Plaintiff, in her opposition to the instant motion, stated that because she could not find affordable representation, "she was prevented from filing amendments, her deposition, and requested documents correctly and in a timely fashion." (P's Opp. at 2.) But Plaintiff never made any application to the Court to amend her pleadings (whether timely and correctly or not), and she has not otherwise indicated that she still wishes to do so, and she has not explained how Velez's alleged theft of USPS credit cards amounted to retaliation. Accordingly, I decline to grant leave to amend *sua sponte* at this late stage of the case. *See Grochowski v. Phx. Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) (no abuse of discretion in denying motion to amend made after discovery completed and while summary judgment motion pending).